# In the United States Court of Federal Claims

No. 19-506C
Filed: January 8, 2021
FOR PUBLICATION

|  |  |
|---|---|
| **BANNUM, INC.,** <br><br> *Plaintiff,* <br><br> **v.** <br><br> **UNITED STATES,** <br><br> *Defendant.* | Keywords: Summary Judgment; RCFC 56; Bureau of Prisons; Contract Disputes Act; 41 U.S.C. § 7104; Termination for Convenience; Termination Settlement Proposal |

*Justin T. Huffman*, Camardo Law Firm, P.C., Auburn, NY, for the plaintiff.

*P. Davis Oliver*, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., *Monica Barron*, Bureau of Prisons, of counsel, for the defendant.

## MEMORANDUM OPINION

***HERTLING*, Judge**

The plaintiff, Bannum, Inc., seeks $317,490.55 in bid preparation and other costs under the Contract Disputes Act, 41 U.S.C. § 7104, resulting from the termination of Bannum's contract. The defendant, the United States, acting through the Bureau of Prisons ("BOP"), terminated its contract with Bannum for convenience, as part of corrective action following a bid protest. Subsequently, the BOP contracting officer rejected Bannum's certified claim, submitted in the form of a termination settlement proposal, which included the costs sought in this case.

The defendant has moved for summary judgment under Rule 56 of the Rules of the Court of Federal Claims ("RCFC"). It argues that the undisputed material facts demonstrate that Bannum is not entitled to recover any costs in connection with the termination of the contract. The Court agrees and grants the defendant's motion for summary judgment.

## I.    BACKGROUND

In January 2015, the BOP awarded Contract No. DJB200231 to Bannum for residential re-entry services in New Orleans, Louisiana. (ECF 1, ¶ 6.) The incumbent contractor, Volunteers of America Greater New Orleans, Inc. ("VOAGNO"), filed a protest of the award at the Government Accountability Office ("GAO"). (*Id.* ¶ 7.) As a result, contract performance was automatically stayed. (*Id.*)

As a result of VOAGNO's protest, the BOP decided to take corrective action, including reevaluating offerors' proposals and making a new source selection decision.  (*Id.* ¶ 8.)  The contracting officer identified four issues that necessitated the BOP's corrective action:

> (1) the language in the technical evaluation did not support the overall ratings and risk level for Bannum in the site location and facility evaluation factors; (2) [the contracting officer] failed to consider a statement in Bannum's proposal that qualified its obligation to meet the 120-day availability requirement; (3) the source selection decision relied on an earlier draft of the technical evaluation report and as a result had assigned a higher risk level to Bannum's proposal than was assigned in the final technical evaluation report; and (4) the source selection decision did not fully consider the substance, relative merits, and ratings of each contract submitted for evaluation of past performance.

(ECF 23, App. at 2.)

In February 2015, the GAO dismissed VOAGNO's protest as academic, due to the BOP's proposed corrective action.  (ECF 1, ¶ 8; ECF 23, App. at 2.)

In March 2015, Bannum filed its own protest with the GAO, claiming that the BOP's corrective action in response to VOAGNO's protest was improper.  (ECF 23, App. at 3.)  In June of the same year, the GAO dismissed Bannum's protest, finding that "the concerns raised by the contracting officer reasonably justified the agency's decision to take corrective action."  (*Id.* at 10.)  The GAO found that "the contracting officer identified an inconsistency in assigning Bannum's proposal a satisfactory rating and low risk under the facility factor in light of the poor state of Bannum's proposed facility . . . ."  (*Id.*)

In July 2015, a BOP contracting officer notified Bannum that Contract DJB200231 was terminated in its entirety, for convenience of the government, at no cost to the government.  (ECF 1, ¶ 9; *see* ECF 1, Ex. 2.)  In that notice, the contracting officer asked Bannum to sign an enclosed bilateral modification to the contract, but Bannum did not sign it.  (ECF 1, ¶ 9; ECF 23, App. at 2.)

In August 2015, Bannum filed another protest with the GAO, arguing that the termination of its contract was improper.  (ECF 1, ¶ 10; ECF 23, App. at 3.)  On November 2, 2015, the GAO dismissed Bannum's second protest.  (ECF 1, Ex. 1.)

Three days later, the contracting officer sent to Bannum a second notice of termination of Contract DJB200231 in its entirety for the convenience of the government, at no cost to the government.  (ECF 1, ¶ 11; *see id.*, Ex. 3.)  The contracting officer enclosed a unilateral modification reflecting the termination of the contract, noting that the termination was the corrective action taken in response to VOAGNO's protest.  (*Id.*)  The unilateral modification provided that "[t]he termination of Contract DJB200231 reflects a no-cost settlement."  (ECF 1,

Ex. 3 at 3.)  Bannum, however, had not agreed to any settlement of costs, including a no-cost settlement.  (ECF 1, ¶ 12.)

In October 2016, Bannum submitted its final settlement proposal for the termination to the BOP, requesting payment in the amount of $317,490.55.  (*Id.* ¶¶ 14-17; *see* ECF 1, Ex. 4 at 31-35.)  Bannum's settlement proposal included four types of costs: (1) Other Costs Associated with the Contract ($300,033.31); (2) General and Administrative Expenses ($5020.94); (3) Profit ($5,523.04); and (4) Settlement with Subcontractors ($6,913.26).  (ECF 1, ¶ 17.)  The category "Other Costs Associated with the Contract" included Bid & Proposal Costs ($5,664.74), Initial/Preparatory Costs ($44,544.68), Protest Costs ($33,596.10), and Estimated Lost Profit and Overhead ($216,727.80).  (ECF 1, Ex. 4 at 33.)  The settlement proposal form that Bannum submitted to the contracting officer included a box labeled "CERTIFICATE."  (*Id.* at 30.)  Bannum signed and certified the proposal.  (*Id.*)

In response to Bannum's settlement proposal, on November 14, 2016, the contracting officer requested further documentation associated with Bannum's termination costs.  (ECF 1, ¶ 18; *see* ECF 1, Ex. 5.)  Specifically, the contracting officer requested invoices, proof of payment, and any corresponding retainer agreements or contracts.  (ECF 1, Ex. 5 at 2.)

In 2017, the BOP issued a new solicitation seeking to replace the contract it had terminated with Bannum.  The BOP eliminated Bannum from the competitive range of the competition.  (ECF 23, App. at 7.)  The contracting officer had requested updated right-to-use information because he had learned that the proposed property under the contract had been sold.[1]  (*Id.*)  Bannum responded to the BOP's discussion notices for the New Orleans property and advised that its option to lease the proposed property remained valid, regardless of any sale of the premises.  (ECF 24, Ex. 1, Decl. of John D. Rich ¶ 22.)  Bannum had not received a notice of termination of the lease from either the original lessor or the successor owner; it still had a valid lease.  *(Id.* ¶ 23.)  Despite three requests from the BOP contracting officer for updated documentation, Bannum did not provide the requested updated documentation concerning its right to use the proposed site location.  (ECF 23, App. at 7.)  The contracting officer eliminated Bannum from the competition, and the BOP ultimately awarded VOAGNO a five-year contract.  (*Id.*)  Bannum protested its exclusion from the competitive range, but the GAO denied the protest.  (*Id.*)

In April 2018, the contracting officer issued a final decision regarding Bannum's settlement proposal, concluding that the documents Bannum submitted with its proposal were insufficient to substantiate the costs it had claimed.  (ECF 1, Ex. 6 at 2.)  The final decision also

---

[1] The contracting officer was concerned because, in a separate procurement, Bannum had failed to inform him that it had lost the right to use a property in Cincinnati, Ohio until discussions over the procurement were reopened.  (ECF 23, App. at 6.)  Another BOP contracting officer had also encountered a similar problem when Bannum failed to inform her that it had lost the right to use the proposed property until the information was requested during later discussions.  (*Id.*)

noted that, despite the contracting officer's request, Bannum had not provided invoices, proof of payment, and any corresponding retainer agreements or contracts in support of the costs it was seeking in its proposed settlement.  (*Id.*)  The final decision concluded that the government would pay no costs in connection with the termination of the contract.  (*Id.*)  The letter informed Bannum that it had no right to appeal the decision administratively, "since Bannum's termination settlement proposal was submitted more than one year after the effective date of the termination."  (*Id.*)  Bannum alleges that this latter finding was erroneous because it had submitted its termination settlement proposal on October 27, 2016, within one year of the November 5, 2015 effective date of the termination.  (ECF 1, ¶ 21.)

In 2019, Bannum filed a complaint in this court challenging the contracting officer's final decision denying Bannum's termination settlement proposal.  (ECF 1.)  Discovery closed on August 31, 2020.  (ECF 20.)  Following discovery, the defendant has moved for summary judgment pursuant to RCFC 56.  (ECF 23.)  The motion has been fully briefed, and the Court determines that oral argument would not assist in the resolution of the motion.

## II.    JURISDICTION AND STANDARD OF REVIEW

The Tucker Act grants this Court "jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States . . . ." 28 U.S.C. § 1491(a)(1).  The Court also has jurisdiction to adjudicate claims arising from contracts covered by the Contract Disputes Act ("CDA"), 41 U.S.C. § 7101 *et seq*.  *See* 28 U.S.C. § 1491 (a)(2).  Portions of Bannum's claim arise under the CDA; others arise directly under the Tucker Act.

Bannum's complaint meets the CDA's threshold requirement of arising under an "express . . . contract . . . made by an executive agency for . . . the procurement of services." 41 U.S.C. § 7102(a)(2).  The complaint also satisfies the CDA's jurisdictional requirements that Bannum's certified claim for a sum certain be submitted to and receive a final decision by the contracting officer on the same operative facts and legal theory.  *See K-Con Bldg. Sys., Inc. v. United States*, 778 F.3d 1000, 1005 (Fed. Cir. 2015).  Bannum submitted its certified claim in the form of a termination settlement proposal to the BOP contracting officer to recover $317,490.55 in alleged costs, and the contracting officer issued a final decision denying that claim.  (ECF 1, Exs. 4 & 6.)  Bannum challenges that final decision.  The Court reviews a contracting officer's decision *de novo*, according it no deference.  41 U.S.C. § 7104(b)(4).

Under RCFC 56, the Court shall grant summary judgment if the pleadings, affidavits, and evidentiary materials filed in a case reveal that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  RCFC 56(a).

A material fact is one "that might affect the outcome of the suit."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine dispute exists when the finder of fact may reasonably resolve the dispute in favor of either party.  *See id.* at 250.

4

The moving party bears the burden of demonstrating the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "'[T]he inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (alteration in original) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam)). To establish "that a fact cannot be or is genuinely disputed," a party must "cite[ ] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials." RCFC 56(c)(1)(A).

One way that a moving party can demonstrate that no material fact is genuinely disputed is by showing that the non-moving party lacks evidence needed to prove an essential element of its claim. *See Celotex Corp.*, 477 U.S. at 322-23 ("[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."). The moving party must do more than merely assert that the non-moving party has not produced enough evidence, but the moving party may show that a fact cannot be genuinely disputed by showing "that an adverse party cannot produce admissible evidence to support the fact." RCFC 56(c)(1); *see Mirror Worlds Techs., LLC v. Facebook, Inc.*, 800 F. App'x 901, 910 (Fed. Cir. 2020) (requiring the moving party to show that sufficient evidence cannot be produced by the non-moving party and denying summary judgment, in part, because discovery was still open).

If the non-moving party responds to such a motion by pointing to sufficient evidence for the Court reasonably to find an essential element of the non-moving party's claim, the Court will find a genuine dispute, deny summary judgment, and allow the non-moving a chance to prove its claim at trial. *See Anderson*, 477 U.S. at 248. The response "must point to an evidentiary conflict created on the record; mere denials or conclusory statements are insufficient." *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1116 (Fed. Cir. 1985) (en banc). While the non-moving party may defeat a motion for summary judgment with evidence, such as hearsay, that would not be admissible at trial, such evidence must be corroborated or reflect some indicia of reliability. *See Alpha I, L.P. v. United States*, 93 Fed. Cl. 280, 293 (2010), *appeal dismissed in relevant part*, 687 F.3d 1009 (Fed. Cir. 2012), *cert. denied*, 571 U.S. 1094 (2013). Nonetheless, "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." RCFC 56(c)(4). If "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial,'" and a grant of summary judgment is appropriate. *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968)).

## III.   DISCUSSION

The defendant argues that undisputed material facts demonstrate that Bannum is not entitled to recover any costs in connection with its settlement proposal for the contract termination. The plaintiff counters that there are material facts in dispute.

The Court has before it several submissions from the parties. The plaintiff has submitted a bid protest decision from the GAO (Bannum Inc., B-411074.4 (Comp. Gen. Nov. 2, 2015))

(ECF 1, Ex. 1); two letters from the BOP contracting officer terminating Bannum's contract (ECF 1, Exs. 2 & 3); Bannum's termination settlement proposal (ECF 1, Ex. 4); one letter from the BOP contracting officer requesting further documentation needed to analyze the settlement proposal (ECF 1, Ex. 5); the contracting officer's final decision denying the settlement proposal (ECF 1, Ex. 6); and a declaration of John D. Rich, president and corporate counsel of Bannum (ECF 24, Ex. 1).  The defendant has submitted a declaration of Kevin Hoff, the BOP contracting officer (ECF 23, App.); two bid protest decisions from the GAO (Bannum, Inc., B-411074.2, B-411074.3 (Comp. Gen. June 12, 2015); Bannum, Inc., B-411074.5 (Comp. Gen. Oct. 10, 2017)) (ECF 23, App.); an invoice from Lee Demers Construction (*id.*); a complaint filed by Bannum against seven current or former BOP employees and that court's ultimate dismissal of the case (*Bannum, Inc. v. Charles E. Samuels, Jr., et al.*, No. 15-1233 (D.D.C. Oct. 28, 2016)) (ECF 25, App.).

The costs that a contractor can recover following a termination for convenience are determined by the terms of the contractual agreement between the contractor and terminating party.  *OK's Cascade Co. v. United States*, 97 Fed. Cl. 635, 646 (2011), *aff'd*, 467 F. App'x 888 (Fed. Cir. 2012).  The contract between the BOP and Bannum incorporated FAR 52.249-2, which provides that the cost principles in FAR Part 31 shall govern all costs claimed, agreed to, or determined under FAR 52.249-2.  *See* FAR 52.249-2(i).  The plaintiff bears the burden of proving its termination costs with certainty, "'as well as the burden of proving the amount of loss with sufficient certainty so that the determination of the amount of damages will be more than mere speculation.'"  *Corban Indus., Inc. v. United States*, 24 Cl. Ct. 284, 286 (1991) (quoting *Lisbon Contractors, Inc. v. United States*, 828 F.2d 759, 767 (Fed. Cir. 1987) (quoting *Willems Indus., Inc. v. United States*, 155 Ct. Cl. 360, 376 (1961), *cert. denied*, 370 U.S. 903 (1962))).

If the contractor and the contracting officer fail to agree on an amount to be paid after a contracting officer terminates a contract for convenience, FAR 52.249-2 provides that the contractor shall be paid:  (1) "[t]he contract price for completed supplies or services . . . not previously paid for"; (2) "[t]he costs incurred in the performance of the work terminated, including initial costs and preparatory expense allocable thereto"; (3) "[t]he cost of settling and paying termination settlement proposals under terminated subcontracts that are properly chargeable to the terminated portion of the contract"; (4) a fair and reasonable profit; and (5) "[t]he reasonable costs of settlement work terminated."  FAR 52.249-2(g).

The plaintiff's settlement proposal, in the form of a certified claim, sought payment for bid and proposal costs, bid protest costs, preparatory costs, general and administrative costs, profit on work performed, settlement expenses, and lost profit and overhead.  The plaintiff renews its claim for these costs in this suit.  The Court addresses each category of the requested costs in turn.

## A.    Bid and Proposal Costs

The plaintiff seeks $5,664.74 in bid and proposal costs.  (ECF 1, Ex. 4 at 33.)  Bannum allegedly incurred these costs in expending time on its proposal and in setting up contractually required systems, such as calendaring, notification, and information systems.  (*Id.* at 34 n. ii.)

6

The costs included a labor charge that Bannum calculated based on estimated hours expended by its Vice President of Operations, Sandy Allen.  (*See id.* at 34 n. ii, 47-50.)

FAR Part 31 allows recovery of precontract costs "to the extent that they would have been allowable if incurred after the date of the contract . . . ."  FAR 31.205-32.[2]  That regulation defines precontract costs as "costs incurred before the effective date of the contract directly pursuant to the negotiation and in anticipation of the contract award when such incurrence is necessary to comply with the proposed contract delivery schedule."  *Id.*  This court has found that bid and proposal costs were inherently precontract costs.  *AT&T Techs., Inc. v. United States*, 18 Cl. Ct. 315, 323 (1989).

Under FAR 31.205-32, three requirements must be satisfied to recover precontract costs: (1) "[s]uch costs must be incurred prior to the contract definitization"; (2) "they must be incurred directly pursuant to negotiations with the contracting authority"; and (3) "the costs would have been allowable if incurred after the contract was delivered."  *Integrated Logistics Support Sys. Int'l, Inc. v. United States*, 47 Fed. Cl. 248, 256 (2000), *aff'd*, 36 F. App'x 650 (Fed. Cir. 2002), *reh'g denied*.  The parties do not dispute that Bannum incurred its bid and proposal costs prior to the effective date of the contract.

In *Integrated Logistics*, this court held that the second element of FAR 31.205-32 "mandates that a contractor seek approval from the contracting officer prior to spending."  47 Fed. Cl. at 256.  The court reasoned that this approval requirement protected the public fisc:

> This approval, at the very least, requires the contractor to inform the contracting authority of the proposed work, thereby putting the Government on notice, and to await government approval.  Without notice the contractor drives the process, and the Government is at the contractor's whim.  Without approval, the Government has no say in how monies are spent and no check to prevent abuse.  This is not the procedure established by FAR § 31.205-32.  That regulation protects the contractor by promising reimbursement for legitimate, sanctioned expenses incurred prior to contract definitization, and protects the Government by obligating the contractor to obtain approval for such expenditures from the contracting authority prior to spending.

---

[2] FAR 31.205-18(c) also allows recovery of bid and proposal costs in bid protests brought under 28 U.S.C. § 1491(b)(2), which expressly provides for bid preparation and proposal costs. The plaintiff concedes that it does not raise a claim under § 1491(b)(2) in its complaint and does not argue that FAR 31.205-18(c) provides a basis for Bannum to recover bid and proposal costs.

*Id.* at 256-57.  There is no dispute that Bannum neither had approval from the contracting officer to recover bid and proposal costs nor incurred those costs pursuant to a negotiation with the contracting officer.

Although not challenging the contract termination itself, the plaintiff argues that its bid and proposal costs are recoverable upon termination due to the government's breach of its implied contract to consider bid proposals fairly and honestly.  The Court has jurisdiction under the Tucker Act over claims founded upon implied contracts with the United States.  28 U.S.C. § 1491(a)(1); *see also MED Trends, Inc. v. United States*, 101 Fed. Cl. 638, 650 (2011) ("The Federal Circuit has held that this court retains the implied-in-fact contract jurisdiction conferred under section 1491(a)(1), even after the enactment of section 1491(b)(1), at least when the plaintiff has no remedy under section 1491(b)(1).") (citing *Res. Conservation Grp., LLC v. United States*, 597 F.3d 1238, 1245 (Fed. Cir. 2010)).  As a specific and narrow category of precontract costs, bid and proposal costs "are the only pre-contract costs recoverable for the government's breach of its implied duty to fairly and honestly consider proposals."  *AT&T Techs.*, 18 Cl. Ct. at 323.

Bannum argues that it secured the contract with the BOP through full and open competition, but that after VOAGNO challenged that award, the BOP undermined its own evaluation process by implementing corrective action for reasons not even alleged in VOAGNO's protest.  Upon recompeting the contract, Bannum alleges that the BOP improperly eliminated it from the competition altogether.

Aside from assertions and hearsay regarding the antipathy towards it of various BOP officials, whose role in the award and termination of the particular contract at issue is not elaborated, Bannum presents no actual evidence that the BOP did not fairly and honestly consider its proposals.  The contracting officer identified four issues that necessitated the BOP's corrective action in the face of VOAGNO's GAO protest:

> (1) the language in the technical evaluation did not support the overall ratings and risk level for Bannum in the site location and facility evaluation factors; (2) [the contracting officer] failed to consider a statement in Bannum's proposal that qualified its obligation to meet the 120-day availability requirement; (3) the source selection decision relied on an earlier draft of the technical evaluation report and as a result had assigned a higher risk level to Bannum's proposal than was assigned in the final technical evaluation report; and (4) the source selection decision did not fully consider the substance, relative merits, and ratings of each contract submitted for evaluation of past performance.

(ECF 23, App. at 2.)

On their face these four issues support the BOP's decision to rescind the initial award and conduct a second procurement.  The record is devoid of any indication of bad faith or improper motive on the part of the BOP in taking corrective action following VOAGNO's protest.  In fact,

the initial award of the New Orleans contract at issue to Bannum undercuts its assertions of bad faith on the part of the BOP, especially in light of the valid reasons identified by the contracting officer in support of the corrective action taken in the face of VOAGNO's GAO protest.

During the BOP's new solicitation, the contracting officer requested updated right-to-use information because he had learned that the property Bannum proposed to use had been sold, and he and the BOP had prior experiences with Bannum losing its right to use property without notifying the BOP. (*Id.* at 7.) Despite three requests for updated documentation, Bannum did not provide that documentation concerning its right to use the proposed site location. (*Id.*) Accordingly, the BOP eliminated Bannum from the competitive range for the new solicitation. (*Id.*)

Bannum does not dispute that it failed to provide the information requested by the BOP. The plaintiff has thus failed to support its claim that the defendant breached its implied duty to consider Bannum's proposal fairly and honestly. Instead, during the new solicitation, the plaintiff failed to submit updated right-to-use information after repeated requests, resulting in Bannum's elimination from the competitive range. In considering the proposals, the contracting officer eliminated Bannum on account of its own inaction, not due to a refusal by the contracting officer to treat Bannum's proposal fairly.

Without the defendant's breach of its duty, the plaintiff is left to rely solely on FAR Part 31 as the basis for its effort to recoup bid and proposal costs. Because Bannum did not seek the contracting officer's approval for bid and proposal costs, these costs are not recoverable as a matter of law because they are not recoverable precontract costs under FAR Part 31.

There are no material facts in dispute regarding the plaintiff's bid and proposal costs, and the plaintiff presents no legal basis to recover those costs. The plaintiff's contention that the defendant did not fairly and honestly consider its proposals is unsupported. Accordingly, the plaintiff cannot recover its bid and proposal costs, whether the claim is considered under § 1491(a)(1) or the CDA.

### B.  Bid Protest Costs

The plaintiff seeks $33,596.10 in costs incurred during its bid protests at the GAO. (ECF 1, Ex. 4 at 33.) Most of the bid protest costs are legal fees, but the total also includes $261.82 of costs attributed to Bannum's home office. (*Id.* at 33, 35.)

There is no dispute that bid protest costs are not included in the termination for convenience provisions of the FAR. *See* FAR 52.249-2(g). The defendant argues that there is no legal basis for Bannum to recover its bid protest costs. Bannum incurred these costs challenging the termination of the contract at the GAO; that challenge failed.

The plaintiff again argues that its bid protest costs are recoverable because the BOP breached an implied contract to consider Bannum's bid fairly and honestly. The plaintiff uses the same general assertions the Court described in the preceding section. Among these assertions is that the BOP undermined its own evaluation process and as a result improperly

eliminated Bannum from the competition.  This argument fails for the same reason explained above: the contracting officer identified issues with Bannum's bid necessitating the BOP's corrective action, and the contracting officer eliminated Bannum from the competition for the new solicitation because of Bannum's own inaction.  The plaintiff has not supported its claim that the defendant breached its duty to consider Bannum's bid fairly and honestly.

Because there is no dispute that bid protest costs are not allowable under the termination for convenience clause as a matter of law, and because the plaintiff does not provide support for its claim that the defendant breached its implied duty to consider Bannum's bid fairly and honestly, the plaintiff cannot recover its bid protest costs.

### C.   Preparatory Costs

The plaintiff seeks $44,544.68 in initial and preparatory costs.  (ECF 1, Ex. 4 at 33.)  Bannum's claims for preparatory costs fall into six categories: (1) the estimated hours spent by Bannum Vice President of Operations, Sandy Allen; (2) the amount paid to Lee Demers Construction for alterations to Bannum's New Orleans facility; (3) the charges made on Bannum's American Express business card for the storage and transportation of beds, equipment, furniture, office items, and the like; (4) the non-refundable deposit made to Fortune One Property for the New Orleans facility; (5) the fees incurred in setting up a limited liability company ("LLC") for the New Orleans facility; and (6) delivery costs associated with the contract.  (*Id.* at 34-35.)

The defendant acknowledges that these costs are recoverable after a termination for convenience.  *See* FAR 52.249-2(g); FAR 31.205-42.  The defendant argues, however, that the plaintiff has failed to provide the documentation to justify and support its claims.  All that Bannum has submitted in support of its claims for these costs is a spreadsheet it prepared based on its general ledger.  Bannum's summary of costs from its general ledger, the defendant argues, is insufficient to support the amounts it claims for these preparatory costs.  The spreadsheet is unverified; the plaintiff has not provided any explanation as to how it prepared the spreadsheet, who prepared it, or what source documents underlie the figures.

The plaintiff bears the burden of proving its termination costs with certainty.  *Corban Indus.*, 24 Cl. Ct. at 286.  Bannum submitted a summary of costs from its general ledger in support of its termination settlement proposal in each of the preparatory-cost categories.  (*See* ECF 1, Ex. 4 at 45-54.)  As part of that submission, a spreadsheet noted the "Total Estimated Hours" that Ms. Allen allegedly expended on the terminated contract.  (*Id.* at 47.)  The spreadsheet noted an estimate of hours spent on each individual task, along with Ms. Allen's wage rate of $22.11 per hour.  (*Id.*)  Bannum has not provided the basis for Ms. Allen's wage rate, such as an explanation of its method of calculating the rate.  To support its claim for these costs, Bannum has not submitted a declaration from Ms. Allen in support of the hours claimed, her pay stub, or any other documentation.  While Mr. Rich does attest to Ms. Allen's wage rate

(ECF 24, Ex. 1, ¶ 28), and while that sworn attestation might be enough to support the wage rate, the number of hours remains unsupported.[3]

The summary of costs also included $27,720 that Bannum allegedly paid to Lee Demers Construction for alterations to the New Orleans facility.  (ECF 1, Ex. 4 at 52.)  The defendant obtained an invoice from Lee Demers Construction to support Bannum's claim of construction expenses, but the invoice notes only a request to Bannum for a deposit of $27,000; it labels John Rich as the intended recipient but does not bear any mark indicating a returned payment.  (*See* ECF 23, App. at 23.)  Despite the defendant's subpoena request for payment documentation, Lee Demers Construction produced no proof that the plaintiff paid the invoice.  (ECF 25 at 9.)  The plaintiff likewise provided no payment documentation beyond the spreadsheet to show that it had paid the invoice.  The defendant argues, and the Court agrees, that in the absence of documentation showing that Bannum has paid the invoice, an invoice requesting payment of a deposit suggests that the more likely explanation is that the construction firm did not perform alterations.

Similarly, Bannum has not provided payment documentation for any of the remaining initial and preparatory costs; instead, it relies on the spreadsheet it prepared itself and submitted to the BOP and again to the Court in support of its complaint.  The Court is confronted with a spreadsheet of alleged costs without any explanation of the method of its preparation or declaration attesting either to that method or to its accuracy.  Despite the contracting officer's request for documentation for the costs claimed (ECF 1, Ex. 5), the plaintiff did not submit to the BOP payroll records, timesheets, invoices, proof of payment, contracts, or any other source

---

[3] Under a schedule proposed by the parties and accepted by the Court, discovery in the case was initiated in October 2019 and was due to conclude at the end of April 2020.  (ECF 12.)  On the date discovery was due to conclude, the parties jointly moved to extend the deadline to complete discovery until the end of August 2020.  (ECF 16.)  That same day, the Court granted the parties' motion, again accepted the parties' proposed schedule, and extended discovery through August 2020.  In doing so, the Court advised the parties that further extensions of the discovery deadline would not be forthcoming.  (ECF 17.)  Shortly before the revised closing date of discovery, the plaintiff moved to extend discovery to the end of October 2020.  Among the issues that remained outstanding was Ms. Allen's deposition.  (ECF 18.)  The plaintiff indicated that Ms. Allen, the plaintiff's own employee, was unavailable for a deposition for several weeks due to "a personal matter."  The defendant opposed the motion.  (ECF 19.)  The Court denied the plaintiff's motion because the plaintiff had failed to explain why additional time was necessary to complete discovery.  (ECF 20.)  With respect specifically to Ms. Allen's deposition, the Court noted that simply asserting "a personal matter" did not demonstrate good cause.  The Court allowed the plaintiff to renew its motion, including under seal if needed to protect private or health information, to extend discovery in order to allow for Ms. Allen's deposition if the plaintiff could provide an explanation for Ms. Allen's unavailability sufficient to show good cause to extend the deadline for that purpose.  The plaintiff never renewed its motion in order to take Ms. Allen's deposition and did not submit a declaration of Ms. Allen in response to the defendant's motion for summary judgment.

documentation in support of its claimed costs. Bannum has failed to produce any such documentation during discovery and has not provided any to the Court in opposition to the defendant's motion for summary judgment.

Instead, Bannum continues to rely on the spreadsheet it prepared and on a declaration by its president, John Rich. Mr. Rich does not indicate that he prepared the spreadsheet or that he has personal knowledge of any of the costs it includes. He notes that he is "fully familiar" with the matters to which he attests (ECF 24, Ex. 1, Decl. of John D. Rich ¶ 2) but fails to explain how the spreadsheet was prepared, what documentation was consulted in its preparation, or what documentation is available to support its contents. It is possible the spreadsheet could have raised disputed issues of material fact, a question the Court does not resolve, if it had been verified in some manner or had supporting materials appended. Mr. Rich, however, did not verify the spreadsheet, and no one else has done so either.

The defendant cites to authority involving similar pricing data to support its motion for summary judgment. In reviewing an Armed Services Board of Contract Appeals decision, the Federal Circuit recently found that the Board did not err in finding that a contractor had failed to prove the reasonableness of its costs. *Kellogg Brown & Root Servs., Inc. v. Sec'y of the Army*, 973 F.3d 1366 (Fed. Cir. 2020). The case involved a claim for equitable adjustments for which the reasonableness of cost was at issue. The Federal Circuit found that the contractor failed to support the reasonableness of its double-handling costs with any record evidence. *Id.* at 1374. The contractor had submitted only spreadsheets summarizing monthly costs but never submitted pricing data from other sources. *Id.* Additionally, the contractor's description of the work performed lacked necessary detail. *Id.* Likewise, in *White Buffalo Constr., Inc. v. United States*, 52 Fed. Cl. 1, *appeal dismissed*, 45 F. App'x 906 (Fed. Cir. 2002), this court held that "[a] mere estimation performed years later of hours believed to be worked" is insufficient in light of plaintiff's "burden of proving that those wages were actually incurred." *Id.* at 13. This court similarly found that it could not rely on general ledgers that lacked both explanation and supporting documentation for the information contained in those ledgers. *See Englewood Terrace Ltd. P'ship v. United States*, 113 Fed. Cl. 718, 739 (2013), *aff'd*, 629 F. App'x 977 (Fed. Cir. 2015).

The plaintiff distinguishes these cases, noting that *Kellogg* was not decided in the context of a summary judgment motion and *White Buffalo* was resolved at trial. The court decided *Englewood Terrace* following a remand from the Federal Circuit on one portion of the damages calculation previously determined at trial; the court reviewed the trial record and additional submissions of the parties on remand. *Id.* at 719-20. The Court recognizes also that the analysis in *Kellogg* did not stand on the lack of record evidence alone. The Federal Circuit considered several other deficiencies, not relevant here, in the contractor's cost data. *See Kellogg*, 973 F.3d at 1374. Additionally, the *Kellogg* court was limited by the standard of review on appeal. The reasonableness of a cost, as a finding of fact, could have been set aside only if it was "'(A) fraudulent, arbitrary, capricious; (B) so grossly erroneous as to necessarily imply bad faith; or (C) not supported by substantial evidence.'" *Id.* at 1370 (quoting 41 U.S.C. § 7107(b)).

Nonetheless, the Court finds the reasoning in these cases persuasive. It is undisputed that the plaintiff has the burden to prove its termination costs with more than mere speculation. *See*

*Corban Indus.*, 24 Cl. Ct. at 286.  In *Corban*, a decision on a motion for summary judgment, the "plaintiff provided no cost information, nor explained why it was unable to separate and document its costs."  *Id.* at 287.  The court granted summary judgment "insofar as plaintiff's failure to raise a genuine issue concerning the absence of evidence of costs of materials and plaintiff's failure to explain its inability to produce this evidence preclude plaintiff from recovering termination costs for materials, including profit."  *Id.* at 288.

In this case, Bannum has not produced records supporting the costs it has claimed, despite having been requested to do so by the contracting officer and again to address the sufficiency of the records supporting its claims before this Court.  Bannum also does not claim to have further proof of its costs to present at a later stage of litigation; instead, it argues only that the information summarized from its general ledger and contained in the spreadsheet is adequate to support its claim for termination costs, at least at the summary judgment stage.  Bannum's summary of costs, however, provides only a spreadsheet with various costs and prices, noting an "Explanation of Costs" in single phrases, such as "Moving & Storage Costs" or "LLC for New Orleans Contract."  (ECF 1, Ex. 4 at 52.)  The spreadsheet provides only general estimates of Ms. Allen's time.  (*Id.* at 47-50.)  The plaintiff does not support any of the cost categories with other sources beyond these spreadsheets.

Spreadsheets in the control of and prepared by the claimant are inadequate without supporting receipts of other evidence, or at least some explanation by the person who prepared them to explain how they were prepared and how the information in them was validated.  Such documents are easy to manufacture and manipulate.  There is no evidence that Bannum has manipulated the spreadsheets presented in support of its claimed costs, and the Court does not suggest that it has; yet, there is likewise no evidence contemporaneous with those costs to support them.  Companies do not do business without receipts, contracts, documentation of costs, and the like.  And companies do not remain in business by failing to maintain such records, at least for as long as the tax man may be able to come in and check the books.

The "best evidence" rule, Rule 1002 of the Federal Rules of Evidence ("FRE"), similarly requires the original records to support a claim when a party seeks to prove the contents of a writing.  FRE 1002; *RN Expertise, Inc. v. United States*, 97 Fed. Cl. 460, 473 (2011); *see also Bendix Corp. v. United States*, 220 Ct. Cl. 507, 519 (1979) ("It is well settled, under the best evidence rule, that in proving the contents of a document, the document itself must be produced unless it is shown to be unavailable through no fault of the proponent.").  The plaintiff has not produced original records, but, instead, has provided only a summary of costs from its general ledger.

The admission of summaries as evidence is governed by FRE 1006.[4]  In *Doninger Metal Products, Corp. v. United States*, 50 Fed. Cl. 110 (2001), this court found, on a motion for

---

[4] FRE 1006 provides:

summary judgment, that the plaintiff's pricing summaries were insufficient under FRE 1006. Centering its analysis on the reliability of summary documents, the court found that the plaintiff was "obligated under [FRE] 1006 to provide an opportunity to the defendant to review and object to the underlying documents." *Id.* at 131. FRE 1006 recognizes "'that the preparation of summaries from other documents carries risks of error or distortion that must be guarded against by giving the opposing party an opportunity to review and object to the underlying documents.'" *Id.* at 130 (quoting *Conoco Inc. v. Dep't of Energy*, 99 F.3d 387, 393 (Fed. Cir. 1997)). The plaintiff could not produce the source documents underlying its summaries and could not demonstrate a factual issue regarding the location of the documents necessary to prove its claims. *Id.* at 131,135. Because the plaintiff could not show that there was a disputed material fact, the court granted the defendant's motion for summary judgment. *Id.* at 139-40.

In this case, the plaintiff has had multiple opportunities to produce admissible evidence—or at least point to some underlying admissible evidence it plans to present at trial—to support its claimed costs. *See Alpha I*, 93 Fed. Cl. at 295 ("At the summary judgment stage, the underlying information, rather than the form of the information, must be admissible."). The contracting officer requested the source documentation; Bannum did not produce it. If it had, this aspect of the suit would have been resolved before arriving at the Court's doorstep. The defendant took discovery of the plaintiff and sought such records in discovery; Bannum did not produce them. The defendant now argues that the absence of such records dooms Bannum's case. Once again, instead of meeting the point head-on, Bannum simply asserts that it need not produce these records to defeat summary judgment. On that point, Bannum is wrong.

The burden the Court places on Bannum is modest. The plaintiff need not prove its case at this stage. It must, however, show that it has a case to make at trial. The plaintiff claims that the defendant has failed to meet its burden of showing that no material facts are in dispute, but the plaintiff cannot avoid summary judgment based on its own failure to provide some indication that it has proof that would ultimately be admissible at trial to support its asserted facts.

The Court finds that the spreadsheets prepared by the plaintiff—unverified by the person who prepared them and unsupported by normal business documentation—are insufficient to support the plaintiff's claim for termination costs. The spreadsheets, standing alone, would be inadmissible at trial and insufficient to support the plaintiff's case-in-chief, and they are insufficient to survive a motion for summary judgment. Accordingly, Bannum has failed to raise a genuine issue concerning the absence of further evidence and cannot recover its preparatory costs.

--------

The proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court. The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place. And the court may order the proponent to produce them in court.

### D.    General & Administrative Expenses; Profit; and Settlement Expenses

The plaintiff seeks $5,020.94 in general and administrative ("G&A") expenses, profit of $5,523.04, and $6,913.26 in settlement expenses.  (ECF 1, Ex. 4 at 33.)  The G&A expenses are calculated as 10 percent of the combined total of Bannum's bid and proposal costs ($5,665.74) and preparatory costs ($44,544.68).  (*Id.*)  The profit requested is calculated as 10 percent of work performed.  (*Id.* at 34.)  The settlement expenses include $4,000 in legal fees and $2,913.26 in continuing costs (continued rental costs for storing furniture for the facility).  (*Id.* at 34-35.)

The G&A expenses are based on a percentage of other costs that, as discussed previously, are not recoverable, *i.e.*, Bannum's bid and proposal costs and preparatory costs.  The bid and proposal costs are not recoverable because the plaintiff has failed to support its contention that the defendant did not fairly and honestly consider its proposals.  The preparatory costs are not recoverable because the plaintiff has failed to provide the documentation needed to support those costs.  Because the plaintiff bases its G&A expenses entirely on other nonrecoverable costs, it cannot recover those expenses.

A "reasonable allowance for profit of work done" is allowable under the termination for convenience regulation.  FAR 52.249-2(f).  Bannum allegedly calculated profit based on a percentage of work performed, but Bannum has conceded that "the contract was terminated before performance could begin."  (ECF 1, Ex. 4 at 34 n. ii.)  Because the regulation limits recovery of profit to "work done," when no work is performed under the contract, no claim for profit is available under the regulation.  Having conceded the essential fact necessary for its claim for profit, the plaintiff cannot recover profit as a matter of law.

A contractor may recover settlement expenses under the termination for convenience regulation.  *See* FAR 52.249-2(g)(3).  The plaintiff seeks legal fees and rental costs but supports these costs only with its spreadsheet.  As the Court already explained regarding Bannum's preparatory costs, its spreadsheet is insufficient to establish its termination costs with certainty.  The plaintiff has failed to provide supporting documentation, and it does not claim that any further documentation is forthcoming.  As a result, the plaintiff cannot recover its settlement expenses.

### E.    Lost Profits and Overhead

Distinct from the claim for profit rejected above in III.D, the plaintiff also seeks $216,727.80 in estimated lost profits and overhead based on the BOP's alleged breach of contract.  (ECF 1, Ex. 4 at 33 & 35.)  The plaintiff alleges a breach of contract due to the BOP's bad faith.

When a termination for convenience is "tainted by bad faith or an abuse of contracting discretion," a breach of contract results.  *Krygoski Const. Co., Inc. v. United States*, 94 F.3d 1537, 1541 (Fed. Cir. 1996), *cert. denied*, 520 U.S. 1210 (1997).  The plaintiff must present clear and convincing evidence of bad faith to overcome the presumption that the government acted in good faith.  *Am-Pro Protective Agency, Inc. v. United States*, 281 F.3d 1234, 1239 (Fed. Cir. 2002).  To overcome the defendant's motion for summary judgment, the plaintiff "must point to

an evidentiary conflict created on the record; mere denials or conclusory statements are insufficient." *SRI Int'l*, 775 F.2d at 1116; *see also Hoch v. United States*, 31 Fed. Cl. 111, 114 (1994) ("In opposing a motion for summary judgment, the non-movant may not simply rest on mere allegations on issues it asserts are disputed.").

The plaintiff presents two theories of the BOP's alleged bad faith, resulting in a breach of contract:

> [E]ither the BOP intended to terminate the contract as soon as it became possible to award said contract to VOAGNO, or counsel and other BOP personnel directed the Contracting Officer to terminate Bannum's contract at the earliest opportunity, in such a manner that the Contracting Officer abdicated his independent decision-making authority when he followed said direction in direct contravention of his prior award of the contract to Bannum.

(ECF 24 at 16.)  The plaintiff has failed to present anything other than mere assertions to support these theories.

The plaintiff tells a story of "certain forces at work within the BOP and VOAGNO" that redirected the contract from Bannum to VOAGNO.  (ECF 24 at 15.)  The BOP initially awarded Bannum the contract considering its evaluation criteria.  (*Id.*)  Then, after VOAGNO filed its protest, the BOP took corrective action, rather than standing behind Bannum.  (*Id.*)  The plaintiff alleges that counsel for the BOP had shown animus toward Bannum for being a "litigious contractor."  (*Id.* at 16.)  Bannum alleges that BOP counsel has suggested that the BOP would be better off with Bannum out of business.[5]  (*Id.* at 4 & 16.)  The BOP then terminated Bannum's contract and allegedly delayed award under the new solicitation, awarding multiple sole-source bridge contracts to VOAGNO as the incumbent.  (*Id.* at 15.)  The contracting officer ultimately eliminated Bannum from the competition, allegedly "improperly challeng[ing] Bannum's right-

---

[5] The plaintiff cites to ECF 1, Exhibit 4 at pages 1, 2, and 5 for support.  Exhibit 4 is Bannum's final termination settlement proposal.  It contains multiple documents, including a memorandum from the Camardo Law Firm to the BOP contracting officer, three redacted notices from the BOP providing justification for other than full and open competition for bridge contracts to VOAGNO, and Bannum's Form 1436, which requests costs on a "total cost" basis. It is unclear to which among these documents the plaintiff cites, though its argument is likely referencing the memorandum.  The memorandum mentions the "BOP counsel who detests Bannum" on page 1 and "a BOP attorney with a history of animosity toward Bannum" on page 2, and alleges that "BOP counsel and certain members with the BOP have shown for years their disdain and hatred toward Bannum" on page 5.  (ECF 1, Ex. 4.)  The Court is unable, however, to find support in the cited exhibit (or any other exhibit) for Bannum's allegation that the BOP counsel suggested that the BOP would be better off with Bannum out of business.

to-use documentation." (*Id.*)  In so doing, Bannum alleges that the BOP improperly eliminated full and open competition for the contract.  (*Id.* at 16.)

The undisputed facts fill in the gaps and expose the plaintiff's story for what it is: mere speculation of animus unsupported by the record before the Court.  After VOAGNO filed its protest, the BOP reevaluated the proposals.  (ECF 1, ¶ 8.)  As noted above, the contracting officer identified four issues that necessitated the BOP's corrective action.  (ECF 23, App. at 2.)  In response to the identified issues, the BOP terminated its contract with Bannum and began a new solicitation.  (ECF 1, ¶ 9.)  Bannum challenged the BOP's corrective action at the GAO, and the GAO dismissed the protest, finding that the record showed that "the concerns raised by the contracting officer reasonably justified the agency's decision to take corrective action."  (ECF 23, App. at 10.)  The GAO also dismissed Bannum's protest that claimed the termination of its contract was improper.  (ECF 1, Ex. 1.); *see also Nationwide Roofing and Sheet Metal Co., Inc. v. United States*, 14 Cl. Ct. 733 (1988) (holding that the Air Force properly terminated a contract award for convenience after discovering that the lowest bidder's bid had been improperly declared nonresponsive).

During the new solicitation, the contracting officer learned that the property Bannum planned to use had been sold.  (ECF 23, App. at 7.)  In two prior procurements, Bannum had not informed the BOP when it had lost the right to use a property.  (*Id.* at 6.)  Considering the new information and the BOP's previous experience with Bannum, the contracting officer, on three separate occasions, requested updated right-to-use documentation.  (*Id.* at 7.)  When Bannum failed to provide that documentation, the contracting officer eliminated it from the competitive range.  (*Id.*)

Bannum protested its exclusion from the competitive range, but the GAO denied the protest.  (*Id.*)  The GAO found that "despite its contentions of agency animus, Bannum has failed to provide sufficient support for its allegations that the contracting officer acted in bad faith or was otherwise biased against the protester."  (*Id.* at 18.)  The GAO's decisions are not binding on this Court, but they reflect that the plaintiff previously suffered a failure of proof on its claim of bad faith.  That failure, together with the allegations in its complaint here, should have made the BOP's bad faith a central element of the opportunity the plaintiff had to take discovery from the BOP in this case.  Despite having had that opportunity, the plaintiff has presented no evidence apart from hearsay and speculation regarding the bad faith of BOP officials.

Ultimately, the BOP excluded Bannum from the competition and awarded VOAGNO the contract.  The plaintiff, however, fails to provide any support for its allegation that the BOP *improperly* redirected the contract to VOAGNO.  *See Kalvar Corp., Inc. v. United States*, 211 Ct. Cl. 192, 199 (1976) ("The mere fact that a contracting officer awards a contract to another company after terminating the plaintiff's contract is insufficient to show bad faith.").

In a decision on a motion for summary judgment, this court found that a contractor had failed to establish by clear and convincing evidence that the Air Force's termination of a contract for convenience was in bad faith.  *Rice Sys., Inc. v. United States*, 62 Fed. Cl. 608 (2004). Deposition testimony contained what Judge Horn called "uncorroborated allegations" of gender

discrimination.  *Id.* at 631.  Without more, the uncorroborated allegations failed to meet the clear and convincing evidence standard.  *Id.*

The plaintiff here similarly relies solely on uncorroborated allegations from its own lawyer of the BOP's bad faith without pointing to an evidentiary conflict.  The undisputed facts show that the contracting officer had a good faith basis for terminating Bannum's contract, and Bannum has lost at the GAO in each of its challenges.  As the non-moving party to a motion for summary judgment, the plaintiff must provide more than allegations to show that there are material facts in dispute.  Bannum had an opportunity to take whatever discovery it needed in order to develop a factual basis to support its assertions of bad faith on the part of the BOP and its officials.  The plaintiff has failed to adduce, or at least place in the record before the Court, facts that put in dispute the issue of whether the BOP acted in bad faith.  Because the plaintiff has failed to demonstrate that there are material facts in dispute, it cannot recover lost profits and overhead based on a breach-of-contract theory.

## IV.    CONCLUSION

The plaintiff is not entitled, under either the Tucker Act or the Contract Disputes Act, to recover any of the costs or profit it claims as a result of the defendant's termination of the contract for convenience.  The Court grants the defendant's motion for summary judgment.

The Court will issue an order directing judgment for the defendant in accordance with this memorandum opinion.

s/ Richard A. Hertling

**Richard A. Hertling**
**Judge**

18